Good morning. May it please the Court, Rachel Goldberg on behalf of the Secretary of Labor. I'd like to reserve five minutes of my time for rebuttal. This case concerns social workers who work for the State of Washington, and the State has received the benefit of their hard work but has not paid them what the law requires. The Fair Labor Standards Act requires that all employees be paid for their overtime work, but provides an exemption for employees employed in a professional capacity. And in this case, deeming these social workers to be exempt under the professional exemption would expand that exemption too far. Exemptions are to be narrowly construed, and they are narrow for a reason, and that is they exempt employees from Congress's requirement that all employees be paid for their overtime work. Congress directed the Secretary to define the professional exemption, and the Department has done so in its notice and comment regulations. I gather that the State, I'll just call it the State rather than the whole thing, does not have any disagreement with the idea that they meet Items 1 and 2. The real issue here is concerning the prolonged specialized instruction. That's really the issue before us, right? That is the issue. As I read this, it appears to me that the CFR 29 CFR 541-301D kind of sets out the main standard, and then you've got these two opinion letters in 2001 and 2005 that really make up the bulk of the Secretary's argument. Is that correct? Correct. And the 2005 in particular seems to have an adverse result for the State. Yes, although our position is also consistent with the 2001 opinion letter. They are consistent with each other and with our position in this case because the 2001 letter deals with social workers working to protect neglected and abused children, so very similar to the social workers here. And in that case, in that letter, there were a list of subjects that the Department had concluded were sufficiently related to the work of social workers, and that list is distinctly different from the subject areas that the State here would accept for its social workers. Do you agree that we owe our deference to the 2001-2005 opinion letter, but not to your litigation posture other than the reasonableness of it? Well, the 2001-2005 letter certainly, yes, are deserving of our deference, but our position is that our brief, our position in this case, is also deserving of our deference in that it is consistent with the regulations. It is not plainly erroneous, and our makes clear Isn't that more in terms of the reasonableness of it? I know you read the Christopher case. I'm familiar with that one, and we found there that where the Secretary takes a position, in effect changing its regulation as part of the, in this case, that was an amicus, but basically saying we've changed our minds, and our very argument is entitled to deference. You're not arguing that in this case, are you? No, this case presents a different situation. In that case, the court found that the problem there was that the regulation was merely parroting the statute. Right, exactly. And our position is consistent with our prior interpretations. There is no flip-flopping, no acquiescence. And I gather that particularly the CFR that I cited before makes it pretty clear that the state cannot count the training that it provides in-house as meeting the requirement for the specialized training. Is that correct? In this situation, no, they cannot. It's a four-week course, a four- to six-week course, and certainly a four- to six-week course provided by the employer cannot make up for otherwise insufficiently specialized educational requirements. Similarly, the district court erred in weighing the work experience requirement as weighing in favor of the exemption. It's certainly fine for the state to require that its applicants have experience, but that work experience, if it's required of all applicants, cannot be the basis for the professional exemption. It certainly can't be the basis for finding that they're sufficiently specialized. Basically, you're just saying that the categories from which the educational requirement can be met are too broad to constitute specialized training. Correct. You could have a degree in physical anthropology and satisfy the requirement. Now, one thing I'm struggling with is that the 2001 letter, which is part of what you're asking us to give deference to, appears to have some syntactical challenges. There are some missing eithers and ors. How are we supposed to sort that out? Well, yes, I have struggled with that myself. But I think you can look at the list of subjects and just despite the difficulties in the missing syntax, look at the list of subjects and on their face it is not difficult to see how they're germane to the work of social workers working with children. And that is what is lacking here. It's difficult to see how gerontology or anthropology is directly related to the work of social workers here. One of the things we're being asked to defer to is a letter which unfortunately is not grammatically sensible and a critical point. So how are we supposed to make sense out of that? Are we supposed to look at the larger context, the intent of the regulation? How are we supposed to give meaning to that letter so that we can give it some deference? Well, I think certainly you start with the regulation and look at the consistency of the letter with that regulation. And while it would be nicer if there were clearer language in the letter, there's nothing in the letter that is inconsistent with the regulation. The subject areas that are listed, it's not hard to conceive how they're directly related. It's sort of we should do a most reasonable construction type of approach. Yes, exactly. And the errors in the letter are not to such a degree that it is impossible to understand what the letter means. So I think one can infer from the letter what was intended. And I would also like to emphasize that Washington State has the burden, as any employer, to prove that its employees qualify for this exemption. And they have had repeated opportunities to put forth evidence as to how the subjects that it requires of its applicants are directly related, and it has not done so. It did not do so below, and it did not do so in its response brief here. And this Court has held that employees have to be plainly and unmistakably within an exemption for it to apply, and Washington State has just not met its burden in this case. This department is not dictating what types of employees Washington State can hire. If they conclude that applicants with anthropology or gerontology, for example, coursework, make great social workers, that's fine. That's their prerogative. It's that if they want the benefit of an exemption so that they don't have to pay their employees overtime, then it's their burden and their requirement to meet the criteria of the exemption. If the Court has no further questions, I'll actually reserve all of the time. Save your time there. Okay, great. Let's hear from the State of Washington, please. Thank you. Good morning. My name is Kara Larson with the Washington State Office of the Attorney General, representing the Department of Social and Health Services here today. As the Court has correctly pointed out, the only issue in dispute, even at the lower court and here with regard to the Fair Labor Standards Act, is the specialized instruction prong of the professional exemption from the overtime requirements of the Fair Labor Standards Act. I'd like to start by responding to the deference issue that was raised by the Court to opposing counsel. While there is a certain amount of deference that is granted to the Department of Labor's regulations and a certain amount of deference that has been granted to their opinion letters that are issued without notice and comment rulemaking, there are different standards of deference to those two things. But given that, though, what we have here is not an issue where the Department of Labor is asking the Court to give deference to its interpretation of a regulation. In fact, it seems to be that both parties pretty well agree on what the regulation means. Let me be sure I understand. Under our, and certainly directly under the FLSA, the employer has the burden of showing that an exemption applies, right? That is correct. And you agree that exemptions are narrowly construed? That is the state of the law, yes. Okay. And the fact that this is a state as opposed to a private employer doesn't make any difference? Well, if you're jumping to our second argument. No, no. I'm not talking about the Tenth Amendment issue. We'll get to that in due course. But just generally speaking, unless you have, okay. All right, so under the circumstances, then, why wouldn't we not owe our deference to the 2001 and 2005 letters? Whatever they may mean, they are at least an expression of the Secretary's construction of her own regulations, are they not? What we believe they are, and we do agree that they actually support the state's position, but what they are are a specific application of the regulation to a set of facts that was presented to them by an employer of some nature saying, here are our facts, please tell us how you would apply your regulation to these facts. And so when it comes to the application of law to facts, they can opine on that in their opinion letters, and that is given deference, though, by a court insofar as it is reasonable, because it is the basic function of the judiciary to apply the law to the facts. And what they are doing in this case, in their litigation position, is asking the court to give deference to their application of the law to the facts and trying to take that away from this court to determine how it applies to the facts. Well, but the opinion letter is, in effect, it's like they're saying, okay, here are some facts that you've given us. Under these circumstances and making these assumptions, this is the way we interpret the law. Isn't that correct? This is the way we interpret this regulation as applied to these facts. Right. So, in effect, it's almost like one of our opinions. We have a little different level of authority, but the reality is they presented some facts. The secretary has said, okay, here are these facts. Here's our regulation. This is the way we apply them, and this is what the regulation means. Isn't that a correct analysis of that? And that's what we owe our deference to. Which is why the only level of deference is whether it's reasonable. It's not a more extended deference is when they are giving interpretation. But what's unreasonable about their letter, I guess, is my question. They seem to be saying it's narrower than your statute, than the state statute. They're saying that the training has to relate to something that involves the actual practice of social work. You have to have therapeutic family counseling type training, and it wouldn't include looking at ape skulls in the Rift Valley of Africa. You know, there's got to be a line somewhere where you can't just have a degree in social science. There has to be some specificity to the social science training that you've had, and that's essentially what the secretary is saying, is it not? Well, that is what they're saying, but, you know, what we presented at the district court level, you know, looking at those opinion letters and looking at the Chatfield case out of Pennsylvania, the federal district court opinion, what we presented was, here is what DSHS has identified as the related fields. Now, if there's deference to be given as to who's the expert in social work and what's a related field, we believe that that is this agency that has been in the business of providing social work for decades, and that is their business. And so they, in their expertise in social work, have said these are the fields that are related to social work. Can I just, I want to splice on to what Judge Vogel has indicated here because I think this maybe narrows it a little bit. Looking at 29 CFR 541.301D, that indicates that the regulation does not exempt, in quotes, does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction. And that's directly from the regulation itself. So does the state agree that the training, I think it's like somebody said four weeks, I may be wrong about the time, but you have some training that you give them there when they first are employed. Do you agree that that does not count for purposes of our analysis in terms of whether these people are specialized? No, it is not our position that the academy that they go through is sufficient to satisfy the specialized training in the regulation. So you are looking at the bachelor's degrees or equivalent coursework that the agency looks at before they even let someone be, you know, before they let an applicant even get referred for an interview. You know, they don't get the academy until they've learned this. So that gets back to what Judge Vogel said before then. So if you have somebody that has an anthropology degree that has no relevance whatsoever to social work and you cannot count the specialized training that the state provides, how then does that satisfy the requirement under the law? Well, I think what it shows is a misunderstanding of what anthropology studies are. And what we see in particular. Well, you have to be careful. My wife is an anthropologist. But see, that's the problem with the Department of Labor's position is they're just simply saying on the basis of anthropology or whatever a title of a degree is, that is, you know, just not, we just don't think that's related because it doesn't seem. But let me point to the record where our own social workers said that cultural relevancy in anthropology, we had declarations from social workers and the supplemental experts of records where they themselves indicated that these were things that were related to social work. And the burden then shifted at the district court level to the Department of Labor to create an issue of fact over that. They presented absolutely no evidence rebutting the state's evidence that all of these fields are related and that the social workers rely on their academic training in performing their duties. And they presented no evidence other than the playground response of are not, isn't so. I don't want to belabor the point because it's only one of several. But, you know, anthropology has many different branches. There is a cultural branch which arguably would be relevant. There's a physical branch that as far as I can tell has no relevance at all because it doesn't involve people. So why is that not proper for the secretary to opine about? It might be in an opinion letter they can opine about that. If they go and they take a look at what anthropology is, they take a look at how it's used in this field. I mean, let me just give you a real-world instance. The state of Washington has a very diverse immigrant population as well as a very diverse Native American population. And the social workers who work for the Department of Social and Health Services deal with various very different cultures and training in different cultures and being culturally sensitive. In other words, anthropology, like sociology, is the study of how people interact in groups and how those groups, the group dynamics, affect their behavior and attitudes. That is very relevant for the ability of social workers to then deal with families in crisis and in distress and give them the appropriate services, recognizing and being sensitive to their specific cultural norms. And anthropology is very related. And, in fact, another one they take issue with is gerontology. Again, they don't try to describe to any court what they think gerontology is or how it's not related, whereas it is a matter of fact. Social workers deal with an aging population all the time. Many of the children who are removed from their families in Washington, the first recourse is to a family placement. And so, as a result, many, many children are placed with grandparents. Social workers in the Child Protective Services and Child Welfare Services then are dealing with not only children's issues, but the issues of aging relatives and end-of-life issues, which, again, are specifically mentioned by social workers. With respect, counsel, what I'm having trouble with about this argument is that here you have a regulation that, by your own admission, is narrowly construed against the employer. I don't read the secretary as trying to tell the state of Washington who it should hire. That's entirely your deal. That's correct. The question is whether this labor law that requires someone to be paid, I'm oversimplifying, time and a half above a certain number of hours applies to some of these folks. You're saying they're professionals with experience learning a profession exemption, they say you're not. It's not a question of whether an anthropologist or a gerontologist can do the job that you have. That's not the issue here. The question is whether you meet the requirements under the regulations to get this exemption. And with the narrow construction issue and the fact that you can't count the specialized training you give, doesn't it become highly relevant that, certainly looking at, I'm using the term that I understand came from the record, the so-called cheat sheet, apparently you can hire people who have counseling, family studies, pastoral counseling, anthropology, gerontology, therapeutic recreation, education, therapeutic fields, or criminal justice. Isn't the department, as a matter of labor law, not as a matter of whether you can hire these people entitled to make a determination whether that fits within the learned profession exemption? Well, I guess that's the issue. That's the issue, isn't it? Because we don't believe that they can do that in a vacuum. We believe they can opine on that, but they've done it in a vacuum here. They've not gone and disputed with true evidence the Department of Social and Health Services expert opinion as to what are related fields. Now, everyone agrees under these opinion letters in 2001-2005 that social work, human behavior sciences, and related fields. And so the rub comes when they allow. But with respect, though, look at the dieback case from the 11th Circuit, probation officers that have the same kind of background. They were denied the coverage. Fife v. Harmon in the 8th Circuit, the aviation operations specialist, same kind of thing, very general degrees, were disqualified. Emergency medical technicians in Vela v. City of Houston in the 5th Circuit. There have been a number of other circuits, and admittedly, ours is not one of them at this point, that have opined on this kind of a thing. It's not in a vacuum in that extent. And it appears that certainly the reasoning of the three cases that I mentioned and others suggest that even though they have the right to hire these people, that's not the issue. The question is whether they qualify for the learned professional exemption. And in those three cases, the Court of Appeals said, no, they're not. Why is this different? Well, if you look at the cases we cited, we have Chatfield, which is a district court opinion, wasn't appealed. And that specifically looked at the same duties and the same types of degrees and found an exemption. Then if you look at other fields where there's very little education at all required, the athletic trainer case, I think, is Ousley. The game warden case, very broad numbers of degrees in the game warden and very little education whatsoever for the athletic trainer, just a few hours of coursework in anatomy and things. I mean, the courts take a flexible approach. I mean, yes, the employer's on the burden, but when you're looking at the reality of the situation, we believe that here the reality is that social work, like law, like medicine, is not homogenous. And there are many tools that you can get through specialized education that equip one to be in this profession. And the tools that the Department of Social and Health Services has determined equip one to practice social work are all related to the practice of social work. That would apply to some of the categories you excluded as well, wouldn't it? I don't believe so. I mean, I believe they thought that the other ones were not sufficiently related. No, they made a decision, but the question is that they decided to include some fields, which arguably are overly broad, and they excluded others. I'm not sure that that helps your argument. You can look at the not acceptable categories and find things in there that would help with a diverse population as well. I guess that's the point I'm trying to make. But maybe only more tangentially so. But, again, they know social work. They know what they need and what's related to social work. And because the opinion letters allow related fields, we believe that what the Department of Labor failed to do here was present any countervailing evidence to our social worker declarations that mention these fields and mention their training as being related to what they do, as well as the Department of Social and Health Services' own statements that this is related. They didn't carry their burden at the district court level to survive summary judgment by showing that they're not related, and that burden was theirs. Thank you very much. Thank you very much for your argument. Appreciate it. We'll hear a rebuttal then from the secretary. Could you address counsel's last point? Sure. That they met their burden. The adequacy of your showing on summary judgment. Sure. And, actually, I think the starting point is they have not met their burden. Perhaps there are declarations from social workers that they took some cultural and anthropology classes, and, yes, they are related. But their human resources recruitment and classification manager, the person who has said that she determines which applicants get forwarded and which don't, Ms. Debbie Cheney Strange, who is in our excerpts of the record, said she provided no details in her declaration indicating how these coursework subjects are related. And, as Judge Vogel, you have acknowledged, these are broad categories. Anthropology, as you noted, includes things that have no relation. Gerontology might have some relation, but you could also study just the health care needs of the elderly, and it's difficult to see how that's related specifically to the work of social workers working with children. So they have not met their burden. All this recruitment and classification manager says in paragraph 12 of her declaration is that coursework is, this is a quote, coursework is directly related to social work if the courses are ones from fields on our acceptable list. So your position is that it's true that the DOL did not provide any response, but she didn't need to because they didn't meet their burden to start with. Exactly. It's not our job to prove that they qualify for the exemption. It is their job from the outset. They want the benefit. They have to prove it. And they just have not done so. I'd also like to come back to the question of deference because it seems, I feel like opposing counsel is confusing the issue somewhat. The regulations, notice and comment regulations, when a department interprets those regulations, be it in an opinion letter or in a brief, the Supreme Court has held, if that interpretation is reasonable, not inconsistent with the regulation, that it gets outward deference, controlling deference. And so it doesn't matter here that this opinion is advanced in a brief as opposed to an opinion letter. Both instances are essentially, as Judge Sussman said, application of the regulation to specific facts. And that's how it has to be. You can't interpret a regulation in a vacuum. You have to interpret it as applied to facts. That's the only way it can be done. And certainly I'd also like to clarify that the 2001 letter and the 2005 letter, it's not our position that this case is exactly like the 2005 letter and not at all like the 2001 letter. Certainly it falls in between. But our position is that it is more analogous to the 2005 letter, which had a broad degree requirement, which was not sufficiently specialized. Is it fair to say that the case law that's out there is not a bright line? You get cases that kind of go both ways. But given the requirement that the law be narrowly construed, given the hour deference to the letters, the opinion letters, given the CFR's regulations themselves that exclude specialized training once people get there, that basically since it's their burden, they haven't met the burden and the Secretary wins. Is that basically where you come down? Well summarized, yes. That's it. Okay. And we would also note that while the Department didn't move for summary judgment below, this Court has held that there is precedent in this Court that the appellant, that the Court can grant summary judgment in favor of the appellant, even though the appellant didn't move for cross-summary judgment. I have one other quick question. I don't know that it warrants a whole lot of time, but I just want to be sure that we get the Department's perspective on the Tenth Amendment argument. In a nutshell, why doesn't that hold any water from the Department's perspective? Well, in 1985, the Supreme Court was quite clear, and Garcia explicitly overturned its prior decision in national cities. So it's hard to view a case more on point. FLSA applies to state governments. The Ninth Circuit has repeatedly affirmed that case. No circuit court that I'm aware of has concluded otherwise. So it's a difficult argument for them to make, I believe. If this Court has no other questions, the Secretary asks the Court to reverse the District Court's order and to conclude that the Washington State social workers 2 and 3s are not exempt under the learned professional exemption. Thank you very much. Thank you both for your fine arguments. We appreciate it. The case of Hilda Solis, Secretary of Labor v. State of Washington, Department of Social and Health Services is submitted.
judges: Noonan, M Smith, Cjj Fogel (N. Cal.), Dj